**UNITED STATES of America,
Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, et al.,
Defendant.**

**In re Application XXIII of
the Election Officer.**

**No. 88 Civ. 4486 DNE.**

United States District Court,
S.D. New York.

April 5, 1999.

Martha Walfoort, James & Hoffman, P.C., Washington, DC, for defendants.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge.

### BACKGROUND

This opinion emanates from the voluntary settlement of an action commenced by the United States of America against, *inter alia*, the International Brotherhood of Teamsters ("IBT" or "the union") and the IBT's General Executive Board ("GEB"). The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goals of the Consent Decree are to rid the IBT of the hideous influence of organized crime and establish a culture of democracy within the union. The long history of this case has been set forth in this Court's numerous prior opinions. Accordingly, only those facts necessary for resolving the instant application shall be set forth.

### FACTS

The 1996 IBT International Union Delegate and Officer Rerun Election ("Rerun Election") took place during the closing months of 1998. On December 7, 1998, the Election Officer, pursuant to Article III, § 5 of the Rules for the Rerun Election (the "Rerun Election Rules"), announced the results of the vote count for the offices of General President, General Secretary Treasurer, International Trustee, Eastern Regional Vice President, and Canada Regional Vice President. On December 9, 1998, the Election Officer an-

nounced the results of the vote count for the offices of Vice President At–Large, Southern Regional Vice President, and Western Regional Vice President. The Election Officer certified the results of the Rerun Election, on January 28, 1999, with two exceptions,[1] and subject to the parties' right to appeal to the Election Appeals Master. *See* Decision of the Election Officer in Election Office Case Nos. PR–409–JC18–NYC; PR–418–EO–EOH; Post–71–EOH; and Post–72–EOH (PR–388–EO–EOH) (January 28, 1999) ("EO Decision").

In his decision, the Election Officer refused to certify the results of J.D. Potter's ("Potter") election for Southern Region Vice President. *Id.* After deciding that Potter's misconduct warranted disqualification, the Election Officer decided not to order a rerun of the Southern Region Vice President race to fill the vacancy that Potter's disqualification created. EO Decision at 52–54. The Election Officer decided to certify one Southern Region Vice President position as vacant, thereby allowing the newly-elected GEB to fill the vacancy by appointment. *Id.* at 53.

The Election Appeals Master affirmed the EO Decision except for that part of the EO Decision authorizing the GEB to fill the vacancy by appointment. *See* Decision of the Election Appeals Master 98 Elec. App. 424(KC) (February 23, 1999) ("EAM Decision"). Instead, the Election Appeals Master ordered a rerun election to fill the vacancy. On appeal, this Court affirmed the EAM Decision in all respects and ordered the Election Officer to submit a rerun election plan for the vacant Southern Region Vice President position by April 1, 1999. *United States v. IBT ("Rerun Certification")*, 88 Civ. 4486, Opinion & Order (S.D.N.Y. March 19, 1999).

On March 26, 1999, the Election Officer submitted to this Court Election Officer's

---

1. As a result of post-election protests, the Election Officer did not certify the results of the Teamsters Canada Vice Presidential contest or the results of J.D. Potter's ("Potter") election for Southern Region Vice President.

On March 31, 1999 the Election Officer issued a decision resolving post-election protests pertaining to the Election of Teamsters Canada Vice Presidents.

Application XXIII for an Order to Conduct a Rerun Election for One IBT Southern Region Vice President Seat ("Application XXIII" or "Southern Region Rerun Plan"). This Court received timely answering memoranda from Doug Mims ("Mims"), a candidate for Southern Region Vice President, and the Government on March 31, 1999. The Election Officer submitted a reply memorandum on April 1, 1999.

### Discussion

The Southern Region Rerun Election is a continuation of the 1996 IBT International officer election. The proposed timetable for the Southern Region Rerun Election is as follows:

| | | |
|---|---|---|
| Day 0 | April 7 | Notice of Supplemental Nominations posted. Notice of Election posted at work sites. |
| Day 2 | April 9 | Supplemental nomination ballots sent to Southern Region delegates. |
| Day 16 | April 23 | Nominating ballots to be returned and tallied. |
| Day 19 | April 26 | Deadline for nominee acceptances and withdrawals. |
| Day 28 | May 7 | Mailing of Southern Region Rerun Election ballots to IBT members. Publication hiatus begins. |
| Day 62 | June 10 | Return of ballots and beginning of Southern Region Rerun Election count. Publication hiatus ends. |

*Id.* at ¶ 28.

The proposed Southern Region Rerun Plan incorporates provisions used in previous election plans that this Court has approved. *See* Declaration of Election Officer Michael G. Cherkasky in Support of Application XXIII ("Cherkasky Dec."), ¶ 12. The campaign finance reporting requirements used during the Rerun Election remain in effect under the Southern Region Rerun Plan. The Southern Region Rerun Plan also requires each candidate to set up a bank account dedicated to this election to hold all contributions. *Id.* at ¶ 15. Additionally, the Southern Region Rerun Plan provides that "[n]o candidate or independent committee may accept any cash contribution in an amount of $50 or more. Such contributions shall be made by check, money order, or other instru-

ment that identifies the individual contributor as the source of the contributed funds." *Id.* at ¶ 16.

The Southern Region Rerun Plan differs from previous plans in four other specific aspects. First, IBT members' requests for replacement ballots will be recorded on the Election Office's toll-free number and new mailing labels will be made daily. *Id.* at ¶ 19. Second, because only one officer is to be elected, the Southern Region Rerun Plan does not permit slate affiliation or the declaration of a slate. *Id.* at ¶ 20. Third, the Southern Region Rerun Plan provides that if there is no issue of *The Teamster* magazine scheduled for mailing at the beginning of May, 1999, the IBT will pay for the publication and mailing to members in the Southern Region of one page of campaign literature describing each candidate and his or her views. *Id* at ¶ 21. Fourth, the Southern Region Rerun Plan reduces the time period for post-election protests from the fifteen-day period provided in the Rerun Election Rules to the three-day period that governed the delegate election. *Id.* at ¶ 22.

In papers to this Court, Mims objected to six items in the Election Officer's Southern Region Rerun Plan. This Court will deal with each objection in turn.

### 1. *Notice of Election*

The proposed Southern Region Rerun Plan provides notice of the Southern Region Rerun Election in the April 1999 issue of *The Teamster*, by posting of a TITAN message and by including the notice of election with the ballots sent out to the members. Mims argues that this will "fail to provide effective notice." Objections of Doug Mims to Election Officer's Application XXIII: Southern Region Rerun Election Plan ("Mims Br.") at 1. Mims asserts that "[t]here needs to be an official *mailed* announcement of an explanation for Mr. Potter's disqualification and the decision to conduct this rerun election, together with a mailed Notice of Election." *Id.* at 2.

■ This Court finds that the Election Officer's proposal will provide ample notice. Distribution by TITAN message is an efficient, prompt and certain method for providing the Notice of Election to IBT Southern Region Local Unions for posting. Furthermore, the Election Officer's Report to the Membership that will be published in the April 1999 issue of *The Teamster* provides the membership with the reasons for Potter's disqualification and the need for a rerun election. Thus, this Court rejects Mims' request for additional notice.

## 2. *Supplemental Nominations*

■ Mims asserts that "[i]t is unjust to hold new nominations" because had Potter been disqualified in pre-election proceedings, "there would have been no new nominations." Mims Br. at 2. Mims' distress over the purported burden of campaigning against a newly nominated candidate is unpersuasive. There are presently three remaining candidates for Southern Region Vice President, and should they continue to compete for election, a campaign will take place regardless of supplemental nominations. This Court agrees with the Election Officer that permitting supplemental nominations will allow for the greatest membership participation in the process and will not cause an undue burden on the previously nominated candidates. *See* Reply Memorandum of Law in Further Support of Election Officer's Application XXIII for Approval of A southern Region Rerun Election Plan ("EO Reply Br.") at 2. Therefore, this Court finds that supplemental nominations is the appropriate course of action in order to encourage greater membership participation in the election process and continue to promote a culture of democracy within the IBT.

## 3. *Campaign Literature*

As Mims points out, although the Election Officer's declaration specifies that one full page will be allocated to each candidate, *see* Cherkasky Dec. at ¶ 21, the proposed Southern Region Rerun Plan inadvertently omits this requirement. The Election Officer has informed this Court that he "will clarify the Southern Region Rerun Plan to include a provision that each candidate will have available one side of one full page for campaign literature." EO Reply Br. at 3. This Court agrees with this clarification of the allocation of space for campaign literature, and thus, the Southern Region Rerun Plan will, thereby, be modified.

Regarding distribution of the literature, the Election Officer has noted that "[i]t is indeed unlikely that literature could be incorporated into *The Teamster* given the magazine's regular publication schedule." EO Reply Br. at 3. Nonetheless, the Election Officer has advised this Court that he "believe[s] that a separate [union financed] campaign literature piece could be prepared and sent by first class mail in the week of May 3, 1999 to coincide with members' receipt of ballots." *Id.*

■ In his papers to this Court, Mims requested that this Court set a specific deadline for the preparation and mailing of candidate campaign literature. Mims Br. at 4. Including such a deadline, however, would be inconsistent with previous election plans. Moreover, a rigid schedule relating to IBT-financed preparation and mailing of candidate campaign literature would likely become a source of protests and objections that could further delay the conclusion of this election process. Therefore, this Court finds that the Election Officer's plan for affording candidates the opportunity to distribute campaign literature is acceptable without a specified deadline for the preparation and mailing.

## 4. *Campaign Contributions and Disclosures*

■ The proposed Southern Region Rerun Plan provides in part: "Any funds remaining in a candidate's 1998 Rerun Election account may be transferred to that candidate's Southern Region Rerun Election account." Southern Region Re-

run Plan at 6. Mims requested that "this provision be interpreted narrowly and literally, as allowing only a candidate in the Southern Region Rerun Election to transfer funds from his own prior 1998 Rerun Election account into that same candidate's new 1999 rerun account." Mims Br. at 4.

The Election Officer has informed this Court that the aforementioned provision was meant to be interpreted as Mims requests, EO Reply Br. at 4, and this Court has no objection to this reading of the provision.

### 5. *Financial Disclosures ("CCERs")*

Mims urges this Court to modify the dates the Election Officer proposed for the filing of the CCERs. Mims Br. at 5. As it is currently constructed, the proposed schedule calls for the filing of the first CCERs on May 15, 1999. According to the proposed timetable for the Southern Region Rerun Election, this would occur after the mailing of ballots on May 7, 1999. Mims argues that "[m]any members are likely to mark and return their ballots before the candidates have had the opportunity to review their opponents' CCERs and inform members of their contents." *Id.* Mims suggests the modification of the calendar to require the filing of the first CCERs on April 30, 1999, another filing on May 15, 1999, and then final CCERs filed to cover the remaining campaign period. *Id.*

The Election Officer informed this Court that "the CCER filing schedule changes proposed by Mr. Mims are reasonable, and the Election Officer will modify the proposed Southern Region Rerun Plan to include those dates." EO Reply Br. at 4. This Court finds that the modifications are appropriate and thus, are to be incorporated into the Southern Region Rerun Plan.

### 6. *Post–Election Protests*

The proposed Southern Region Rerun Plan shortens the time for filing post-election protests to three days. Cherkasky Dec. at ¶ 22. Mims requests that this Court modify this provision to allow for a ten-day post-election protest deadline. Mims Br. at 5.

Under the Rerun Election Rules, post-election protests are generally limited to "election day or post-election day conduct" and any deferred pre-election protests. *See* Rerun Election Rules, Art. XIV, § 3; Art. XIV, § 2(f)(2). Given the limitations on the scope of post-election protests, a short time frame is appropriate for this regional rerun election. The Election Officer, nonetheless, has informed this Court that he is willing to modify this portion of the Southern Region Rerun Plan to allow for a period of five calendar days after the announcement of the results of the election for filing of post-election protests. This Court finds this to be a reasonable modification, and thus, it is hereby incorporated into the Southern Region Rerun Plan.

### *Conclusion*

For the reasons discussed above, it is hereby ordered that Election Officer Application XXIII is granted and the proposed Southern Region Rerun Election Plan is adopted as amended in this opinion.

It is further ordered that all subordinate entities of the International Brotherhood of Teamsters, including all locals and joint councils, are hereby bound by the Southern Region Rerun Election Plan, effective immediately.

It is further ordered that these rules shall be enforceable upon pain of contempt.

SO ORDERED.